The Counsel for plaintiff in error filed the following petition for re-hearing.

, If the amount in controversy was the only motive left to induce the undersigned to make another effort in behalf of the plaintiff in error, this court might never again have heard of “Old Jolly.” But the principles involved are important in the action of tro-ver, and the most solemn conviction, that if the opinion is allowed to stand, it will revolutionize and affect the heretofore settled law, has induced this petition for a re-hearing.
It is more than doubted that the counts in trover and case are misjoined in the same action. With due respect, the undersigned trusts that this doubt will be retracted.
He has always understood the rule to be, that any actions or counts may be joined, which admit of the same plea, and the same judgment, and particularly* if the same judgement is allowed. This is expressed in almost every author who treats on the subject, and under the rule, a more frequent joinder cannot be found than the junction of trover and case* in the same declaration. See I. Chitty, 199, Marg. pa. and authorities there cited. Esp. Am. Ed. 589, Marg. pa. Chitty in his II. Vol. Marg. pa. 322 and 378, where* giving the forms of action, and different counts therein, and particular cases, &c, trover allows the joining of the two, and of adding mutually, a count in case to a count in trover, and vice versa. This learned author, whose writings are standards, has deceived the profession, if such counts cannot be united. It matters not in what situation the personal property is* or under what circumstances. If trover can be brought, case for the same injury thereto will lie.
The reason assigned by the court that they cannot be joined, is, that the counts for/raud, suppose Jolly *89 to belong to Kennet, and that if he should fecove'r special damages on those counts, he would be entitled to the horse still, while a recovery in trovet would vest the property in Robinson.
This reasoning is not sufficient to prevent the joinder of the two actions. Both trover and casé suppose the property to be in Kennefe, and a recovery in either, to a certain extent, would rest the.property in Robinson, while a partial recovery would not do it in either. If the jury for the fraud, have given to Kennet only the difference between the value of the horse, estimated at what he really is worth, and that which he was represented to be, and was valued at, in the sale; then the horse would still belong to Kennet, and he would be entitled to him and the damages both-. On the contrary, as Kennet had endeavored to disaf-firm the contract, by restoring'the horse, if he had recovered for the fraud the full price paid for him, with other concomitant damages, then the horse would have been vested in Robinson. So in trover, if the jury find for the plaintiff, the value of the article converted, the property is vested in the defendant. If, on the contrary, they only find damages for the con-versón or user, then the property belongs to the plaintiff. The same may happen in trespass for a tortious taking. If the jury find damages for the tortious ta-lcing and carrying away only, then the property still belongs to the plaintiff. If they add to their verdict the value of the thing taken and Carried away, then the property taken, vests in the defendant. And in all these cases, where the right of property is contested in future actions, it rests upon the enquiry, as to what the verdict was composed of, and whether the value of the property makes a component part of it; and this inquiry is always open to be enquired of, by the record, or evidence dehors the record. As therefore, the same events might have happened, by a verdict on either of these counts, they could be joined, and even an intimation, that they could not be so joined, will tend to unsettle and shake in the inferior tribunals the settled doctrines of the law. That rateable damages, omitting the value of the property in trover, may be given, is clear. For, says Espinasse. vol. ÍL *90 582, “it is not necessary to support this action, (tro-ver) that the owner should be absolutely deprived of his goods by the conversón of him, who has had the possession of them; for damages are recoverable, in this action, for any partial conversón or user of the goods of another, by the owner, after he has had the possession of them.” The same doctrine is recognized in Bac. Abr. title trover. See also Stran. 576.
But this is not the main question intended to be considered in this petition; but the right of the plaintiff to recover at all, for the want of a conversion, as the court supposes, is the point to which the attention of the court is earnestly and respectfully recalled.
It is argreed on all hands that title in the plaintiff whether special or genera], and conversion in the defendant, is necessary to a recovery; and if they exist, he is entitled to recover, unless the defendant has some lien for wages or compensation, which lien, till removed by payment, on the part of the plaintiff, as to an inkeeper for keeping a horse, amounts to a special property in the defendant.
No such lien exists here in the defendant, for the court has rightfully held that the taking up the horse as an estray, when he knew the owner, gave the defendant no lien, and doubtless taking up an es-try rightfully, does give a lien, which must be removed before the owner can recover, and even gives a special property, which may ripen'into absolute ownership, under the statute concerning estrays.
That Kennet holds the property here, is clear, and is admitted by the court. What then ishis situation? In an action where his title was in issue,the defendant has a general verdict against him, which destroys his title; and the defendant keeps the horse, and also keeps the price. It is a clear position, that generally a verdict and judgement in trover, is a bar in detinue, and vice versa. What remedy has Kennet left?
But if Rennet’s title is clear, and the defendant has possession, whether with or without leave, the only reason why he cannot recover must be for the want of proof of conversion.
*91 The court seems to lay some stress on the want of demand and refusal. Was such demand and refusal ever necessary when the plaintiff could prove the defendant had used the property? Never. It is clear law, that a demand and refusal is not a conversion, but only evidence of a conversion; and the defendant may show that notwithstanding there is á demand by the plaintiff, and a refusal on his own part; yet there has been no conversion, and thereby defeat the action. Espinasse’s Ni. Pri. 590. Bacon Abr. tit. trover.
The proof here is, that the defendant had posted the horse, and claimed him till his fees were paid. This the court remarks, was never said to the plaintiff; but if the fact is confessed to others, is it not enough? The court notices in another place, that Rennet had frequently disclaimed the horse; and this was never done in the hearing of the defendant, and for the same reason cannot prejudice the plaintiff. It would do less injury to set off one of these circumstances against the other, than to blind the plaintiff by one, and excuse the defendant from the other. The court has correctly said that there must be a lortio.us taking, or an assumption of title, or an allegation to sustain the action.
It is conceived, that although there is no tortious taking here, but a delivery of the horse'to the defendant, yet there is an assumption of title, by the defendant. Why did he post the horsei Was it not to give him a lien, a qualified right, till the lien should be removed and the horse redeemed? What other motive-could have induced it? It could not have been to give the owner notice; it was to give color of claim and a right to keep. The court has condemned this act in the defendant, and yet allows it to be innocent. At most, the defendant was a bailee, to keep the horse for the plaintiff, and bound to restore him when required. Not satisfied with this, he attempted to manufacture, through the lien, a title of his own, and to. hold the horse as an eslray. As the tenant at will, who sets up for himself, and forgets his fealty, or acquires title from another source, is not entitled to notice to quit; so the defendant here, after attempting to create such claim and assume such right, was enli- *92 tied to no demand and refusal. The cases are analogous, though one applies to realty, and the other to personal estate. On this point the law is clear, that the assuming a right to dispose of the property, or exercising a dominion over it, to the exclusion or in defiance of the plaintiff’s right, is a conversion by the defendant. Bristol vs. Bent. VII. John. 254. Bacon Abr. title trover. This act, and this claiming and posting as an estray, and not as a bailee under the plaintiff, it is insisted, is a conversion, which entitles the plaintiff to his action.
But let it be admitted for the sake of argument, (and for that alone) that this position cannot be maintained, still the plaintiff in this action clearly proves by indisputable evidence, that the defendant had used the horse. The proof is, that Robinson worked the horse, and said he would not give him up, until the plaintiff paid the. expenses of taking him up, as an es-tray 5 that he worked him part of the ploughing season, and rode him also. He also.loaned the horse to others, with instructions to them to keep the plaintiff from th.e horse, till the expenses of posting were paid. He also hired the horse out to another to plough, and tend a crop for the hire, which he did, and the defendant re-, ccived payment of the hire. These facts are in the record uncontested; and if this was not emphatically converting the horse to the defendant’s own use, it is hard tp say what would be a conversion. There is no. proof, the defendant fed the horse, as the court seems to suppose. This must be inference only. But as it is also proved, that Old Jolly sometimes, was running at large, he might have got his living, by his own industry.,
It-cannot be presumed that it is the intention of the court to say, that the use must go to abuse, and extend to a certain degree of harsh treatment, to constitue a conversion in trover. If so, the position is contested, and it is laid down with confidence, that any use, applying property to its ordinary purposes, without harsh treatment or severity, if it is done without the consent and permission of the true owner.•, is a conversion, for which the action of trover will lie. Can it even be intended to split up the question of use, to create the. perplexing difficulty, how harsh, severe, or unreason* *93 able the use may be? Is the doctrine of trover, for conversion or using to be changed, and the action to lie only for abuse? On this point the court referred to the case of Barnett vs. Lightfoot, I. Monroe, 241. In that case, a defendant had taken up a horse as an estray, and within the ten days, which were to be allowed, before he was posted, the defendant’s wife took ill, and there was a necessity of sending for a physician; and he had no other means of sending but by taking the horse and dispatching a messenger on him to the nearest physician, which was done. It was adjudged, that this was such a use as made the defendant a trespasser, ab initio; and he was held liable in trespass. Consequently, it was such a use as made the defendant liable in trover. The undersigned might venture to challenge a case, when an appropriation to ordinary use, without the consentof the true owner, has not been held a sufficient conversion. That kind of injury which attends usual wearing an,d Using, is sufficient. The case above cited in VII. Johnson, is also in point. It is admitted, as the horse was delivered to the defendant in this instance, (and tro-ver always supposes the possession of the defendant to be lawful.) it was incumbent upon him to show a demand, a failure to deliver, or to prove that the defendant had appropriated the horse to his own use, whether moderately or immoderately; whether as horses are generally used, or disused, is immaterial. The plaintiff proved the latter; and is therefore entitled to his action, Unless the defendant can shew the authority or consent of the plaintiff for so doing. In this, he has failed. Such consent or permission is indispensable. This, the court must have allowed the jury to infer from the circumstances, when there is no ground for such inferences, and this is the remaining question.
For what purpose was the horse sent by the plaintiff? Was it not evident that the design was to disaf-firm the contract? The defendant then had his election to disaffirm also, and make the horse his property, or to refuse to do so; and to let the horse belong to the plaintiff. In the latter case, he ought to have turned the horse out; or if that was merciless, as the court seems to suppose, to send him back; or if he kept him *94 at all, he was bound to do so, as a simple bailee; and if a bailee, even by loan, use the article different from the purpose, as expressed, he is liable. Espin. Ni. Pri. 254^ 245. He could not use the horse without in-currjng liability. Can it be said that the bare sending the horse there for the purpose of disaffirming the contract, and no oilier, and having him in the defendant’s enclosure, gave the defendant a right to refuse a dis-affirmance ; hut yet, at the same time, the right to take him and use him as his own? To raise crops with him, and hire him to others to do it, and to charge them not to restore him to the plaintiff? Nay, further, to put expense upon him; to claim him as an estray, and to claim the right of possession till these expenses were paid ? Certainly this liberty cannot be taken without liability. If the defendant had agreed to disaffirm, then he could have used the horse as his own, for he would have been his own; but as he refused to disaf-firm, it follows clearly, that he had no right to keep the horse and use him as his own, If he did, he becomes liable. He cannot plead the authority of the plaintiff! If he kept the horse at all, he could not use him. Leave to do so was wanting. Every man who comes lawfully by goods, by a delivery from another, without any authority to use them, or for a purpose to which he will not apply them, must simply keep them without use; and if he loses them by negligence, is liable as a baileein case; and if he uses them, fie is liable, in trover, for a conversion. Many cases might be adduced in support of this position; but it is, needless, for every case proceeds on this hypothesis. It is therefore, earnestly contended, that the possession of the defendant, in this case, was not such a one. as permitted him to use the horse; to lend and hire him, and far less, to invent a claim to him by posting, as the defendant did in this instance.
The evidence in the case, is not contradictory, and no fact deposed, is inconsistent with another. It involves a nicety in settling the doctrines, as to what amounts to a conversion; what is the duty of a bailee. The defendant might have excused himself from aggravated damages, but not from the value. It is the principle that causes this effect. The fate of Old Jolly, old and worthless as he is, may settle the rights of *95 thousánds, and such small cases very often establish important principles which govern larger; and the court is assured that the most firm conviction that the law is not righty settled by the court, has induced this petition for a re-hearing.
ferent causes of action, cató sa¿edeclaration, where judgment to all the counts-maJ b.e w¡thoutits exceptions.
Judge Robertson delivered the response of the court overruling the petition, as follows:
Having examined the authorities cited in the petition, and many others, before the opinion was delivered, it could not be expected that it will be changed, unless, on a reconsideration, the arguments presented in the petition, or other new views that may occur to the court, ou its own more deliberate reflections, shall alter its construction of the law or facts of the case.
The respect which we feel for the learned counsel, and the alarm which he seems to feel for the action of trover, if the opinion shall remain unaltered, have induced us to re-examine the law and the facts, with increased anxiety, to ascertain their true and proper bearing on this case. But we have not seen any sufficient reason for changing the opinion.
As to the joinder of trover and fraud, in separate counts, in the same declaration, a doubt only was intimated of its propriety.
Whether the joinder was proper'or not, was not materia], and, therefore, we regret that any allusion whatever was made to it. But as great importance has been attached to the passing suggestion of doubt, which we made, it is necessary that this point should be noticed again.
The general rule for joining different causes of action in the same declaration,^, that those to which the-same plea may be filed and on which the same judgment may be rendered, may be joined. There are, however, exceptions to this rule. See II. Saunders, 117, c. d.
We would not doubt that fraud and trover might, in some instances, be joined, for when the declaration shows that, if there be fraud, the contract is rescinded and the property is in the defendant. Trover supposes that the property has been conyérted. It *96 is true, that after a restitufion of the property tóthé owner, he may recover damages for a previous com version of it, by the person restoring it, and it is equally true that in trover and cáse for fraud, the same plea of not guilty, may be pleaded and the like judgment for damages rendered. But we ate yet not sure, that without any allegation of a tender of the property, a count for fraud in the sale of it, can be joined with a count for conversion, unless this count show that the thing had been restored. The declaration in this case, contains a count in the usual form, for trover and conversion, showing that the horse is still in Robinson’s possession, and two counts for fraud, without any allegation, that the contract was rescinded; consequently, it would seem that a recovery on the one, would be governed by one criterion, and would have one effect, and that a judgment on the others, would be measured by a differ-' ent rule, and have a different effect. Notwithstanding this, perhaps they may be joined. We will not say they cannot. But we repeat our doubts.
Whether a count for tro-ver and conversion, and a count for fraud intho sale of a horse, can be joined in the same declaration, without an allegation that (he contract has been rescinded, dubitalur.
Demand and refusal do not constitute a conversion. They are only evidence of a conversion.
On one count, the plaintiff must prove property in the horse; in the other, he disclaims any title whatever. These circumstances create doubt, on principle. But perhaps the letter of the authorities wmuld authorize the joinder; our minds are rather inclined to the opinion that it would*
As to the conversion, which is the main question, it is somewhat remarkable, that whilst it is evident, when the opinion of the court is understood, that the counsel and the court differ but little, if at all, about the law, the application of the law to the facts, by the court, not to reverse but to sustain the verdict of a jury, is considered as an alarming innovation. Wé had supposed that the verdict of a iury, especially in a tortease, should be sustained if it could be, by any reasonable and allowable construction of the evidence.
Demand and refusal do not constitute a conversion. They are only evidence of a conversion. This is distinctly stated in the opinion. And, therefore, there is no difference between the counsel and the court, on this subject.
Where def’t. has come to the possession of the thing, legally, or without wrong to the pl’tff. he cannot be made liable for a conversion, unless an actual conversion be proved ; or there has been a demand and refusal.
Whenever a defendant has obtained the possession legally, or without a wrong to the plaintiff, he cannot be made liable for a conversion, unless an actual version be proved; or there shall have been a demand ánd refusal, without any lien or other circumstances which will excise the defendant. Starkie, 1496; IX. Johnson, 361; VI. Modern, 212; VIII. Johnson, 446; Bul. N. P. 44.
There was no demand in this case, and, therefore, an actual conversion must be clearly shown, before this court can control the finding of the jury.
It is admitted that there was no taking. But the counsel insists that there was an improper assumption of property by Robinson, and that he made an illegal use of the horse, and that, therefore, in each particular, he was guilty of a conversion.
On the first ground, there siirely ought not to be any serious doubt; Rdbinson studiously and perseveringly disclaimed all title to the hbrse. He frequently stated, jocularly, (more to tantalize and vex Kennet, than for any serious purpose, we presume from the facts,) that he would be paid for posting Jolly. Even this, which is the solitary circumstance on which the Counsel argues, that there was an assertion of proprietorship, is conclusive evidence that Robinson disclaimed any property in the horse. And this cannot convict of conversion, unless it had been proved that, on a demand, he had refused to surrender the horse, unless the fees for posting him were paid.
The posting is not a conversion. It cannot have injured the horse or its owner. It only, the more clearly, identified the owner. It was a disclaimer of right by Robinson, in the most authentic and impressive mode. But if there was an illegal use, then there was an “assumption.”'
The sole question, therefore, is, as was supposed, when the opinion was written, whether Robinson made such an use of Jolly, as to convict him of a conversion; and, therefore, render a demand and refusal unnecessary.
What acts constitute a conversion.
The solution of this proposition, depending as it does, on nice distinctions of fact, as well as law, presented difficulty. But we were unable to reverse the judgment of the circuit court, on the verdict of the jury. We should have been inclined to find a similar verdict, if we had been of the jury. And we are still of the same opinion.
We did not say that use, without abuse, or in other words, without injury, could not amount to a conversion. We only said that, in this case, as the horse was delivered by Kennet to Robinson, under all the circumstances attending the deliver)', Robinson hud a right to use him, provided he did not do so excessively, or to his injury. This we still maintain. If Robinson had no right to make any use of the horse, then of course, any use of him was a conversion. The whole difficulty is, therefore, resolved (as it is in the opinion,) into one simple proposition. Had Robinson a right to make any use whatever, of the horse? For it is not suggested, (and if it were, it would be without good reason,) that if Robinson had a right to use Jolly, he abused that right, by making any unreasonable, unusual or immoderate use of him.
A person having a right to use the property of another, is not guilty of a conversion by using it, unless he use it in an unreasonable or unauthorized manner, which would be abuse, and consequently a conversion. Robinson refused to take the horse. He notified Kennet that he would not rescind the contract, and had no authority to do so; that if he left the horse in his possession, against his will, he would post him, &c. Notwithstanding all this remonstrance and warning, Kennet had the horse turned loose in Robinson’s lot. For what purpose? Surely not under the expectation that the contract would, thereby, be rescinded, with the assent of Robinson.
A simple tender of the horse, would have had as much effect -to rescind the contract, as forcing him into Robinson’s possession against his will, possibly could have. Why then did he leave him in Robinson’s lot? To be turned out? Or to be kept by Robinson and preserved from starvation until it could, by a full experiment, be ascertained whether Robinson *99 would not relent and determine to keep him? Robinson had no right to keep Jolly as his own, if he had been willing to do it, unless Kennet had made a gift of him; because Robinson sold him, not to Kennet, bq-t to Daniel; and received the price, not from Ken-net, but from Daniel. He is then to be considered as a stranger to the contract between Kennet and Dan? iel. What right had Kennet to demand a recision of the contract, between Robinson and Daniel? What right had he to send the horse to Robinson, for the purpose of forcing upon him liability for his value? None whatever.
When he turned the horse out, therefore, he either intended to abandon him as a derelict, or force him into Robinson’s possession, to extort, unjustifiably, some unjust advantage, or to leave him in Robinson’s possession, with the expectation that he would take care of him and treat him as if he were his own. If Kennet abandoned Jolly, or intended that Robinson should use him, Robinson had a right to use him. If he intended only to place him in such a situation as to, subject him to starvation or compel Robinson either to consent to keep him as his own, or to feed him and use him, so that he might be liable for his value in trover, there ought to be no recovery in this case.
Robinson not only refused to receive Jolly, but after he had been left in his lot, without his consent, and would not voluntarily leave him, he requested one individual to notify Kennet that he desired him to come and take the horse away; and at his request, another individual conversed with Kennet, and endeavored to prevail on him to take the horse from Robinson’s. But he peremptorily refused to do it, and denied that he had any right, oq claim to him. What then, we repeat, was Robinson to do? It was not his duty to send the horse to Kennet, because he had not taken him from Kennet, and Kennet would not have received him. Only two courses were,, therefore, left for Robinson to adopt; either to turn the horse out, and keep him out, or to let him stay* preserve his life, and for so doing, to make occasional and moderate use of him. The latter, he chose of the least of the evils; for, to him, each presented *100 itself as an evil. If he had turned the horse out every day, it is probable and almost certain, (for he was sometimes turned out,) that he wopld not have gone to Kennet’s. He' must, therefore, either starve or be fed by Robinson, We cannot blame him for feeding him. The petition denies that there is any proof that he fed him. We only answer, that he lived and retained his flesh, and, therefore, we presume, was supplied with the means of sustenance by Robinson. Did Robinson then make an illegal use of Jolly?
i?e h^'ro perty of alio-therfeven ' " without his frommotfves ofkinfinMBnr benevolence or ¿Loused and without ’ any intention to convert it owner, it is a case, tb« áot is not nor its effects in-m.Hnm.
*100 If the horse had been in the custody of the law, any use of him by Robinson, except tojjpreserve and take care of him, would have been a conversion, Hence the taker up of an estray will be guilty óf a conversion, if he ride or work it. Such is the case in I. Monroe.
If the horse had been bailed to Robinson for a particular purpose, and he had used him for any other purpose, without the ozmner’s consent, he would have been guilty of a conversion; as if he had borrowed him to ride and had put him to work. So if a carrier of wine, draw some of the wine and drink it, he is guilty of a conversion, Rut no use, that is with the assent, express or implied, of the owner, or is consistent with the nature of the possession, will subject the possessor to damages for a conversion.
If a person use the property of another, even bis knowledge, from motives of kindness or benevolence to the owner or to the thing used, and without any intention to convert Jupr injure the owner, he cannot be guilty of conversion. Because there has been no tort in such a case. The act is nottortiflus; its^ttectis not injurious. Hence the following doctrine is laid dowiTin Stafkie, 1605: “As the actÍ9n is founded on tort, it is a good defence to show that the subject matter for which the action was brought, was not taken injuriously, but with a view £0 (ije owner’s benefit, or to prevent mischief, arid without any intention to convert it.”
his is not as strong a case of conversion as the one stated by Starkie. In this there was no taking, in that there was. But in every other characteristic, *101 the cases are almost identical. Here the horse was kept, not “injuriously,” but for “the owner’s benefit,” or, “io prevent mischief, and wtlhout any intention to convert¡¡¡¡Jtpus,
Was it not kindness to the horse, to rescue him from starvation? Was it not for the benefit of Kennet, that the horse has been preserved in good condition, so that he may get him whenever he will? Is notthis more to his advantage, than the loss of the horse, which would probably have been the result of a refusal by Robinson to feed him? Has not Robinson prevented mischief? Is it not evident that he bad no intention to convert the horse? He did not withhold the horse. He even turned him out often, but he would not go away. If he had not used the horse, the counsel seems to admit that he would not have been guilty of a conversion, by feeding and preserving him. But had he not a right to make a reasonable use of him? And had he not, at least, the implied assent of Ken-net to such use? The use could not be considered to be against the will of Kennet, for he denied that he had any interest in the horse, refused to take him, and had forced him into Robinson’s possession, without the semblance of right to do so, and with a perfect knowledge, that if Robinson suffered him to stay, he would make some use of him. It would have been unreasonable to expect that Robinson would feed the horse and not ¡use him.
This is unlike an ordinary bailment: there the bailee has a contract, express or implied, with the bailor, and receives the thing willingly. But Jolly was forced on Robinson. If one man turn his horse into the enclosure of another, without his consent, and afterwards refuse to take him, or have any thing to. do with him, the other may feed him, and for feeding him may usé him, without being made liable for his value. The law is reasonable. Its end is justice and peace. It will not punish a citizen when he has been guilty of no wrong. It will not tolerate fraud, nor reward cunning or violence.
The person into whose possession another has, without his consent, placed his horse, may turn him put, and will not be responsible for any consequence *102 that may follow. But it is not his duty to do this. He may, if he choose, be kind to the horse and mag- - nanimous to the owner, by taking care of the horse and preventing any thing injurious or mischievous to him or to his owner. And this would be the most proper and commendable course. And can it be said, if the owner refuse to take his horse again, that the person in possession, has no right to put a boy on him to send for a doctor, to save his wife or his child, or to make any other use whatever, of him, without making himself responsible for his value? By putting the horse in his possession and refusing to take him out of it, has not the owner given him authority to use him moderately, without abuse? Will not the law approve such an use? Is it against the policy of the law or contrary to the dictates of natural justice? Why was the horse forced upon him? For the obvious purpose of compelling him to pay for him. Is it the business or purpose of the law, to sanction and reward such conduct? Is it not better that it should be rebuked, by at least, withholding the countenance of the law, and letting him know that the horse is still his, and that he must either take him and desist from his trickery, or abandon him at once as a derelict. As Kennet renounced all claim to him, and refused to take him back, he could not maintain trover for the horse, unless Robinson had refused to surrender him on demand.
It seems to us, therefore, that there is no principle of law, or decision of any court, which will make Robinson liable for a conversion, in this case, by barely using Jolly. Then did he injure him, or do injury to his owner? It is not proved that he detained him without the consent of the owner, or refused to give him up. And although he used him with his own horses, and suffered a neighbor to use him on a particular octasion, just as he would have allowed him to use one of his own, we see nothing unreasonable, in the degree or kind of use, if he had a right to make any use of the horse.
One additional remark only, may be necessary, as to the posting. Robinson had no legal right to post the horse. But he told Kennet that he would do so, *103 if he wSuld turn him into his loti Kennet, notwithstanding, did turn out the horse, in Robinson’s lot. lie cannot, therefore, complain.
The counsel apprehends that if the opinion, in this case stand, Kennet will loose his horse, and be reme-diless. If this shall be so, it would be the consequence of his own improper conduct. But how can it be so? The verdict is only that Robinson is not guilty. This does not prove that the horse is not Rennet’s. Suppose Robinson had had a lien on the horse, and succeeded on the ground that Kennet had not satisfied it, would this prove that the horse is Robinson’s? The conversion is the gravamen of the action of trover. Because A, is not guilty of converting the horse of B, it does not follow that the horse is A’s, and not B’s. If this difficulty in the counsel’s mind be really ■“'a formidable one, then it will be the duty of juries, in similar cases, either to find the defendant guilty, whether he be so or not, or to state specially, in their verdict, the ground on which they find for the defendant. For the objection urged here, will apply equally well to every verdict of not guilty, for a defendant in possession. There is nothing in the objection.
This case is unlike any other, which has been,reported, or ever decided, so far as we know. We decided it according to what we considered the reason and analogy of the law. None of the authorities cited in the petition, bear, in any degree, on such a case as this. We are not sure that we have decided the case correctly. But "we believe that we have. We have more confidence now, in the correctness of the opinion, than we had when it was delivered.
We can see no injurious consequences which may result from any doctrine attempted to be maintained in this case. Unless it be injurious to say to him, who wishes to administer the law in his own case, “manu forti,” “forbear; if you wish to have the benefit of a tender, make the tender, and if the other party refuse to accept it, appeal to the courts of justice, but do not attempt to force upon him the thing tcndei'ed, at the hazzard of its destruction. If you *104 do, you will be a trespasser on his rights instead of his being a trespasser on yours.”
This we consider good advice. When Kennet put his horse into Robinson’s lot, after being warned not to do it, was he not guilty of a trespass? Suppose Robinson were to sue him for this trespass, would he not have a better right to damages than Kennet has shown in this case? Robinson did not take the horse; he did not keep him from Kennet; Kennet would not receive him, and disclaimed all title to him. Robinson neither sold nor abused him, but fed and used him only; therefore; vRobinson cannot be liable for his value in trover.
Wherefore, the petition is overruled.